UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**GARY PLASKIE, JR.**

      **Plaintiff,**          **CIVIL ACTION NO. 04-CV-74111-DT**

    **vs.**                       **DISTRICT JUDGE ROBERT H. CLELAND**

**COMMISSIONER OF**        **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

      **Defendant.**
_____/

## REPORT AND RECOMMENDATION

This Court recommends that Plaintiff's Motion for Summary Judgment be **DENIED** and Defendant's Motion for Summary Judgment be **GRANTED**. The decision of the Commissioner is supported by substantial evidence on the record.

## PROCEDURAL HISTORY

This is an action for judicial review of the final decision by the Commissioner of Social Security that the Plaintiff was not "disabled" for purposes of the Social Security Act. 42 U.S.C. §§ 423, 1382. The issue for review is whether the Commissioner's decision is supported by substantial evidence on the record.

Plaintiff Gary J. Plaskie initially filed an application for Disability Insurance Benefits (DIB) on February 10, 1998 alleging that he had been disabled since October 29, 1997. (Tr. 92-94). Defendant initially denied Plaintiff's application, and denied it again after a request for reconsideration. (Tr. 76, 82). Plaintiff sought and obtained an administrative hearing before ALJ Alfred Varga on March 12, 1999. (Tr. 29-71). The ALJ issued a written opinion denying Plaintiff's claim on July 12, 1999. (Tr. 18-24). The Appeals Council denied review of the ALJ's decision on

November 2, 2001. (Tr.5). On December 17, 2001 Plaintiff filed a complaint in the United States District Court in the Eastern District of Michigan. (Tr. 380).

Plaintiff filed a second DIB application on January 23, 2002, alleging a disability onset date of July 14, 1999. (Tr. 428, 436). On June 12, 2002 the District Court remanded Plaintiff's appeal of the denial of his first DIB application for reconsideration. (Tr. 382-385). On August 28, 2002, the Appeals Council consolidated Plaintiff's two DIB applications, vacated the ALJ's prior decision regarding Plaintiff's first application, and set the combined case for rehearing. (Tr. 386-388).

On October 14, 2003 Plaintiff had a second administrative hearing before ALJ Varga. (845-872). The ALJ issued a written opinion finding Plaintiff not disabled on April 16, 2002. (Tr. 349-363). Defendant denied Plaintiff's request for reconsideration of the hearing decision, and the ALJ's decision is now the final decision of the Commissioner. (Tr. 3); 20 C.F.R. § 404.981. Plaintiff appealed the denial of his claims to this Court, and both parties have filed motions for summary judgment.

## **MEDICAL HISTORY**

Plaintiff was born on April 9, 1943. (Tr. 92). He was employed as a teacher in 1997. On October 29, 1997 Plaintiff was physically assaulted by a student. Later that day, Anthony Vincenti, M.D. noted that Plaintiff had should not return to work until further notice. (Tr. 220). David J. Olen, M.D. treated Plaintiff for depression beginning in December, 1997. (Tr. 306). Plaintiff complained of insomnia, low mood, anxiety, panic attacks, difficulty with memory and concentration, apathy, crying, and decreased libido. *Id.* On April 9, 1998 Saul Forman, M.D. evaluated Plaintiff on behalf of the Michigan Disability Determination Program. (Tr. 261-265). Plaintiff noted that he had frequently had nightmares after his student assaulted him, but they had

largely stopped. Plaintiff reported he was able to golf, play tennis, cook, travel, enjoy movies, and drive. *Id.* Dr. Forman concluded that Plaintiff had some situational problems with anxiety and depression, and some symptoms of post traumatic stress disorder, he gave Plaintiff a Global Overall Assessment of Functioning (GAF) score of 61 to 70 points out of 100. (Id.).

Plaintiff treated frequently with the psychologist Peter Keelin, Ph.D., F.L.P. for anxiety and depression from 1997 through 2001. (Tr. 598-627). On July 10, 1998 Dr. Keelin noted that Plaintiff's thoughts of physical threats were fading. (Tr. 612). Dr. Olen examined Plaintiff again on July 21, 1998. (Tr. 531-536). He noted that Plaintiff still had some depression, some anxiety, and decreased libido, but was "better along all parameters." *Id.* On August 1, 1998 Donald Tate, Ph.D., a psychologist, performed a "psychiatric" evaluation of Plaintiff. (Tr. 164- 172). He concluded that Plaintiff suffered from mild depression and a mild anxiety disorder, and had only slight restrictions in his activities of daily living, slight difficulty in maintaining social functioning, and slight deficiencies of concentration, persistence, and pace. *Id.* On the same day, H. C. Tien, M.D. performed a mental residual functional capacity assessment of Plaintiff. (Tr. 151-173). Dr. Tien also concluded that Plaintiff suffered from an anxiety disorder characterized by motor tension and a depressive disorder characterized by decreased energy. *Id.* In September, 1998 Plaintiff reported to Dr. Keelin that was "doing well" and was feeling better than he had "in a long time." (Tr. 530). On December 17, 1998 Dr. Keelin noted that Plaintiff was looking and feeling better. (Tr. 299). Dr. Keelin noted on January 14, 1999 that Plaintiff was making slow progress. (Tr. 298).

On February 22, 1999 Dr. Olen charted that Plaintiff's concentration and memory had improved with treatment. He also noted that Plaintiff "continues to complain of symptoms that disable him from any type of work." (Tr. 306). In his response to a questionnaire from Plaintiff's

attorney dated March 12, 1999, Dr. Keelin gave Plaintiff a GAF score of 45 and described him as having severe post traumatic stress syndrome. (Tr. 308-313). In response to a similar questionnaire dated March 23, 1999 Dr. Keelin opined that Plaintiff suffered marked limitations in his activities of daily living, marked limitations his ability to maintain social functioning, difficulty maintaining concentration, persistence, and pace, and had experienced a period of decompensation in a work setting in 1997. (Tr. 326-327).

On July 14, 1999 Gerald O'Connor examined Plaintiff's knees following complaints of persistent pain. (Tr. 594). He found that although Plaintiff's knees had undergone some degenerative changes, they were stable and were not swollen. *Id.* He suggested Plaintiff begin physical therapy. *Id.* On September 2, 1999 Plaintiff's physical therapist reported that Plaintiff's knee and lower back pain had improved somewhat. (Tr. 564). On November 16, 1999 Plaintiff's physical therapist reported that he was no longer suffering low back pain, and that had only occasional knee pain with activity. (Tr. 558). On March 7, 2001 Plaintiff complained of persistent pain in his right hip and right groin. (Tr. 675). He was diagnosed with piriformis syndrome, placed on pain medication, and told to begin physical therapy for his right hip. *Id.* Theodore Shively, D.O. treated Plaintiff for a lumbar sprain on October 31, 2000. (Tr. 677). He concluded that there was no hint of a dangerous problem, and gave Plaintiff a ten day prescription for pain medication. *Id.*

Plaintiff was evaluated on April 17, 2002 by Kasturi Puri, M.D, who concluded that Plaintiff would have difficulty tolerating labor intensive work because of his back and knee pain. (Tr. 713-16). On May 10, 2002 Dr. Tien performed a second mental residual functional capacity assessment of Plaintiff. (Tr. 461). He concluded that Plaintiff was moderately limited in his abilities to sustain

an ordinary routine without special supervision, to work with others without being distracted, and to set realistic goals and independent plans. (Tr. 461-462).

An x-ray of Plaintiff's cervical spine taken on February 2, 2003 showed moderate disc space thinning at the between C4 and T1, and foraminal encroachment at C-4-5, C5-6 and C6-7. (Tr. 810). Plaintiff reported on February 10, 2003 that his back pain had improved and that he generally felt good. (Tr. 811). On February 21, 2003 he reported some pain after playing tennis, and on April 30, 2003 Plaintiff complained that he was in severe pain following a day of painting. *Id.*

## HEARING TESTIMONY

At the administrative hearing, Plaintiff testified that he had an apathetic mood, but was able to maintain old friendships and play doubles tennis once a week. (Tr. 854-55). He reported that he was able to walk for up to a half mile with his dog, stand for up to twenty minutes at a time, and sit for up to 30 minutes at a time, but was unable to lift any weight. (Tr. 861). In his February, 2002 daily activities questionnaire, Plaintiff described himself as able to stand for up to an hour and lift between 30 and 40 pounds. (Tr. 459).

A vocational expert, Michael Rosko, also testified at the hearing. (Tr. 868). He testified that a person of Plaintiff's age, experience, and educational level would not be able to perform any of Plaitniff's past work if he suffered from all of the functional deficits claimed by Plaintiff. (Tr. 868-869).

## STANDARD OF REVIEW

Title 42 U.S.C. § 405(g) gives this Court jurisdiction to review the Commissioner's decisions. Judicial review of those decisions is limited to determining whether her findings are supported by substantial evidence and whether she employed the proper legal standards. *Richardson*

*v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson,* 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)). It is not the function of this court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

In determining whether substantial evidence supports the Commissioner's decision, the Court must examine the administrative record as a whole. *Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even where substantial evidence also supports the opposite conclusion and the reviewing court would decide the matter differently. *Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999).

## DISCUSSION AND ANALYSIS

The Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff had to show that:

(1) he was not presently engaged in substantial gainful employment; and

(2) he suffered from a severe impairment; and

(3) the impairment met or was medically equal to a "listed impairment;" or

(4) he did not have the residual functional capacity (RFC) to perform his relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(e); 20 C.F.R.. § 416.920(a)-(e). If Plaintiff's impairments prevented him from doing his past work, the Commissioner would, at step five, consider his RFC, age, education and past work experience to determine if he could perform other work. If he could not,

he would be deemed disabled. 20 C.F.R. § 404.1520(f). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

In this case, the ALJ concluded that Plaintiff retained the functional capacity to perform skilled light work. Having found that Plaintiff's past work as a teacher is skilled light work, the ALJ concluded at step four that Plaintiff was not disabled because he retains the functional capacity to perform some of his relevant past work.

Plaintiff first argues that the ALJ should have found Plaintiff disabled at step three because he met the requirements of medical listing 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04(A) for depression. The ALJ's conclusion that Plaintiff did not meet the listing requirements was supported by substantial evidence on the record. The ALJ conceded that Plaintiff displayed symptoms meeting the 12.04 criteria between from October 1997 through December 19, 1997. However, to satisfy a medical listing at step three, Plaintiff's symptoms must persist or be expected to persist for a twelve month period. A claimant does not satisfy § 12.04 unless he demonstrates at least two of the four criteria listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04 B: (1) marked restriction of the activities of daily living; (2) marked difficulties maintaining social functioning; (3) marked deficiencies of concentration, persistence, or pace resulting in frequent failure to complete tasks in a timely manner;

(4) repeated episodes of deterioration or decompensation in a work or work like setting.  Substantial evidence supports the ALJ's conclusion that Plaintiff did not meet any of the first three criteria for any twelve month period beginning in 1997.  Plaintiff's own self reports from 1998 and later show that he was able to maintain friendships, play golf, go to movies, and travel.  Both examining and treating physicians noted Plaintiff's range of activities, and the evidence on the record supports the conclusion that Plaintiff did not suffer marked limitations in his activities of daily living or ability to maintain a social life.  Similarly, Plaintiff's own self-reports and his treatment records do not show substantial limitations in Plaintiff's ability to complete tasks in a timely manner.  Dr. Olen opined in February that Plaintiff's concentration and memory had substantially improved since 1997 once Plaintiff began treatment and retired from the school at which he was attacked.  (Tr. 306).

Plaintiff next argues that the ALJ improperly discounted his allegations of pain.  20 C.F.R. § 404.1529 and Social Security Ruling 96-7p govern an ALJ's credibility determination.  They require that the ALJ consider a variety of factors in reaching a credibility determination, including the state of the medical evidence, treatment history, medication history, Plaintiff's daily activities, and any inconsistencies in Plaintiff's own testimony.  Plaintiff's argument relies principally on the conclusory statements of Dr. Vincenti that Plaintiff was unable to work because he was disabled by pain.  (Tr. 206-7).  However, the objective medical evidence demonstrates that while Plaintiff experienced bouts of severe pain beginning in 1997, his various complaints have improved substantially with physical therapy, rest, and pain medication.  Plaintiff's treatment plan never included knee or back surgery, and his knee and back continued to function well enough to allow him to play tennis on a regular basis.  The ALJ's conclusion that Plaintiff's subjective complaints of pain were not entirely credible was therefore supported by substantial evidence on the record.

Plaintiff argues that the ALJ failed to give proper deference to statements by Plaintiff's treating physicians that Plaintiff was disabled and could not work. The "treating physician rule" requires that an ALJ give complete deference to the well supported statements of treating physicans that are consistent with other substantial evidence of record. *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993). However, an ALJ may reasonably discount the opinions or statements of a treating physician when those statements are unsupported by objective evidence. *McCoy o/b/o/ McCoy v. Chater*, 81 F.3d 44, 47 (6th Cir. 1995). Dr. Vincenti's conclusory statements that Plaintiff is totally disabled and the statements of Drs. Olen and Keelin that Plaintiff is disabled in response to a questionnaire sent to them by Plaintiff's attorney are not entitled to mandatory deference. The treatment notes of Drs. Olen, Keelin, and Vincenti all show that Plaintiff's various limitations were substantially alleviated by 1998 through treatment. Moreover, Plaintiff's reported activities contradict the conclusions of Plaintiff's physicians that he is markedly or severely psychologically and socially limited. In light of these circumstances, the ALJ was reasonable in giving controlling weight to Plaintiff's self-reports, the treatment notes of Plaintiff's treating physicians, and the evaluations of Plaintiff's examining physicians.

The ALJ's conclusion that Plaintiff was not disabled is supported by substantial evidence on the record.

## **RECOMMENDATION**

The Commissioner's decision is supported by substantial evidence. Plaintiff's Motion for Summary Judgment should be DENIED, and. Defendant's Motion for Summary Judgment should be GRANTED.

Either party to this action may object to and seek review of this Report and Recommendation, but must act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation.  *Willis v. Secretary*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: January 26, 2006          s/ Mona K. Majzoub
                                 MONA K. MAJZOUB
                                 UNITED STATES MAGISTRATE JUDGE


**Proof of Service**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: January 26, 2006          s/ Lisa C. Bartlett
                                 Courtroom Deputy